### WELLS *v.* SIBLEY *et al.*

(*Supreme Court, General Term, Fifth Department.*   April 11, 1890.)

1. NEGLIGENCE—OBSTRUCTION OF SIDEWALK.

   While passing along a public street in the evening, plaintiff fell over the iron door of a man-hole in the sidewalk which defendants, the abutting owners, had caused to be left open. In an action to recover for the injuries, plaintiff testified that he was walking fast at the time, and that there was no guard, or anything to indicate that the door was open, but that the sidewalk was lighted. *Held*, that a nonsuit was error.

2. SAME—TRIAL.

   The words "wrongful" and "negligent" being synonymous, plaintiff's counsel, by asking to go to the jury on the question of the act being "wrongful," did not abandon the theory of negligence.

Appeal from circuit court, Monroe county.

Action by George W. Wells against Rufus A. Sibley and others. The court granted a nonsuit, and from the judgment entered thereon plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Chamberlain & Kerr,* for appellant.   *A. H. Harris,* for respondent.

CORLETT, J.   About the 22d day of May, 1886, the defendants occupied for business purposes the basement and ground floor of the building known as the "Osborne House Block," in Rochester, bounded south by Main street, west by North St. Paul street, and north by Division street. On the sidewalk on the south side of Division street, about a rod from the corner of St. Paul street, in the rear of the Osborne House block, there was a man-hole in the sidewalk, covered by an iron door about three feet square, which was raised on hinges. This door, when open, formed an obstruction to free passage on the sidewalk at that point. This man-hole was used by the defendants and their employes, as occasion required, in carrying on their business. On the evening in question the plaintiff was walking along this sidewalk, from St. Paul street, at half past 7 or 8 o'clock in the evening, fell over this door, and received the injuries for which this action is brought. The complaint is in the usual form of actions for negligence, charging, among other things, that the act of leaving the door open was wrongful and negligent. The answer, in substance, admits the occupancy of the basement by the defendants, but denies the other allegations in the complaint. The action was tried at a circuit court held in Rochester in June, 1889. At the close of the plaintiff's evidence the defendant moved for a nonsuit upon the grounds—"*First,* that the plaintiff had failed to show that this accident was caused by the negligence of the defendant; *second,* that he has failed to show that he was free from contributory negligence." The court granted the motion, and the plaintiff excepted. The plaintiff's counsel also asked to go to the jury on the question of this being a wrongful act. This was denied, and the plaintiff's counsel excepted. A motion for a new trial was made and denied. Judgment was entered against the plaintiff for costs, and he appeals to this court.

The errors alleged by the plaintiff are for granting the nonsuit, and refusing to submit the case to the jury. The plaintiff's testimony on the trial as to what occurred at the time of the injury is as follows: "I am the plaintiff in this action. Reside in Rochester, and have for about eighteen years. I was in the army, and was connected with the fire department of this city. I am now an agent or peddler, collector and deliverer, for Hathaway & Gordon, and have been for 16 or 17 years in this city, steadily, except about six months that I was away. I am a married man, and have a family of children. On the 22d day of November, 1886, I received an injury. My wife was taken sick. I came down on a car after a midwife. Went to see if I could get a hack. Saw one, when I got to St. Paul street, right back of the defendant's premises. I came to Rochester a stranger, and had no definite knowledge,

from observation, as to what the condition of that street and area back of Sibley's store was on November 22, 1886. There was an iron-plate door that set in the grating. The door was about three feet square: This was about half past 7 or 8 o'clock. I was walking on the sidewalk at the time. Didn't know there was any door there at all before I fell. I was going along pretty fast, and I struck that door. I supposed it was all level. I went clear over the door, and struck my head against a boiler that laid on the sidewalk; and I turned around, after picking myself up, and I made a halloo down cellar at them." The rest of his direct examination relates to the extent of his injuries. On the subject of what occurred, he testified on his cross-examination: "I think the door was open, about three feet high. It was not raining or snowing that night. Never was there in the evening before, that I know of. Think the streets were lighted by electric lights. The Casino was on the corner opposite defendant's store. Think it was in full blast that evening. Have been in the Casino, but not for two or three years. Think it was brilliantly lighted. There was a little lobby right at the front entrance. I don't recollect about the lights there at that time. It was dark there, where I was. I did not walk over the grating that laid west of the trap-door. I fell over the grating and door. I could have passed over two or three rods of grating before I struck the door. Think the rods run north and south. I went to the locality a few days after the accident, alone, to look at the place. Guess that was after I saw Mr. Sibley about it. Don't know whether it was the same day I saw Sibley, or later. Do not think that the door was on such an incline at the time of the accident that I could have walked up it as I came to it. I was on a fast walk when I came to it, looking ahead of me. Just at the time I hollered to the hackman I struck the door. Fell clear over it. My body was over. Can't say as to my legs. Struck the boiler with my head, and the sidewalk with my knee. Struck the sidewalk on the east side of it. Didn't stay there more than two or three minutes after I struck, I guess. Did not examine the place then. I looked down into the cellar. Think I saw two or three men down there, underneath this door that was open. Down near the foot of the stairs; not under the door, exactly. I called out to them. They didn't answer. Think they had a lantern in there. Can't say what they were doing." The plaintiff, on the redirect examination, further testified: "There was no guard, or anything whatever to indicate to me, before I struck the door, that it was open. The first I knew it was open was when I fell over it." James Morgan, the hackman, a witness for the plaintiff, also testified to seeing the accident. William J. Burke, a witness for the plaintiff, testified that this hole opened into an engine or boiler room, and that he had seen the door used by the fireman who attended to Sibley's boilers, and that he had seen the defendant's engineer go up and down the hole in the day-time, but never in the night.

A person passing along a sidewalk has a right to presume it to be safe. He is bound to no special care, and cannot be charged with negligence for not being on his guard against an unlawful obstruction, or for not looking for it, although it is visible. *McGuire* v. *Spence*, 91 N. Y. 303. Under the evidence in this case, it is very clear that the trial court fell into an error in nonsuiting the plaintiff. In reviewing the propriety of a nonsuit, the appellant is entitled to have all the evidence construed in a manner most favorable to his contention. *Harris* v. *Perry*, 89 N. Y. 308; *Sherry* v. *Railroad Co.*, 104 N. Y. 652, 10 N. E. Rep. 128.

But the learned counsel for the defendant insists that the plaintiff, by asking to go to the jury on the question of the act being a wrongful one, waived or abandoned all claim on the theory of negligence. In *Dickinson* v. *Mayor, etc.*, 92 N. Y. 584, cited by the learned counsel for the defendant, it was held that the words "improperly," "carelessly," "negligently," and "unlawfully," show a cause of action for negligence; and the learned counsel for the defendant is

right in claiming that the words "unlawful" and "wrongful" are synonymous. It follows, therefore, that, when the plaintiff's counsel asked to go to the jury on the question of its being a wrongful act, he did not abandon the theory of negligence; for the word itself is a definition of "negligence." Aside from this, it was held in *Clifford* v. *Dam*, 81 N. Y. 52, that all it was necessary for the plaintiff to prove and make out a cause of action on account of falling into a man-hole in a sidewalk was to show its existence, the defendant's responsibility therefor, and that the plaintiff fell into it. So that, even if it should be assumed that the word "wrongful" does not include negligence, or that it is inconsistent with it, still the plaintiff was, in any event, entitled to go to the jury on that question. It is alleged in the complaint that the act was wrongful. It is obvious that the trial justice did not grant, or intend to grant, a nonsuit on any question of pleading, or the technical meaning of a single word, but on the merits. The judgment and order must be reversed, and a new trial granted, with costs to abide the event.

DWIGHT, P. J., concurring.　MACOMBER, J., not voting.